## Shaffer v. Cornwell
*[Cite as 8 AOA 560]*

*Case No. 90AP-772
Franklin County, (10th)
Decided December 18, 1990*

*Eugene P. Weiss, for Appellees.*

*Gregory D. Rankin, Lane, Alton & Horst, for Appellant.*

KLINE, J.

Plaintiffs-appellees and defendant-appellant appeal and cross-appeal from a judgment of the common pleas court awarding plaintiffs post-judgment interest.

Plaintiffs, Micky L. Shaffer and Thomas B. Shaffer ("Shaffers"), filed a complaint in the trial court naming as a defendant Cynthia Cornwell. The Shaffers alleged damages caused by an automobile accident. Cornwell was the operator of a motor vehicle. The owner of that vehicle was released before trial after her insurer paid the Shaffers $25,000 in settlement of their claim.

This action was tried to a jury. On November 15, 1989, a verdict of $117,000 was rendered in favor of the Shaffers. However, neither the Shaffers nor Cornwell could agree on a judgment entry. The Shaffers believed that they should receive the full $117,000 verdict. Cornwell believed the $117,000 verdict should be reduced by the $25,000 the Shaffers received from the vehicle owner's insurer.

On December 16, 1988, Cornwell's counsel sent both a letter and a draft in the amount of $92,000 to Shaffers' counsel. The letter stated:

"Notwithstanding our last telephone conversation, I enclose for your consideration my client's draft in the amount of $92,000.00. If your clients are willing to accept this sum in final resolution of this matter, I would ask that you execute the proposed Entry which I earlier sent to you as well as the enclosed Notice of Satisfaction of Judgment.

"It seems to me that resolving the case on this basis is the most appropriate and expeditious means of concluding this matter. Please call me if you have any questions."

Shaffers' counsel received the letter and the $92,000 draft on December 17, 1988. The Shaffers refused to negotiate the draft. Shaffers' counsel kept the draft in his possession.

On January 9, 1989, a hearing was held before the trial court to determine which of the two conflicting amounts should be journalized as the judgment of the court. On January 18, 1989, the trial court journalized a decision finding that Cornwell was not entitled to the $25,000 set-off.[1]

Upon appeal, this court, on September 19, 1989, rendered an opinion reversing the trial court's decision. *Shaffer v. Cornwell* (Sept. 19, 1989), No. 89AP-196, unreported (1989 Opinions 3420). This court held that Cornwell was entitled to the $25,000 set-off. Thus, the jury verdict of $117,000 was reduced to $92,000.

On December 8, 1989, the Shaffers and Cornwell agreed to (1) allow the Shaffers to negotiate the original $92,000 draft, and (2) have the trial court determine the issue of post-judgment interest.

The trial court awarded the Shaffers post-judgment interest from January 18, 1989 (the date of its decision) until September 19, 1989 (the date of this court's opinion). The amount of post-judgment interest awarded to the Shaffers from Cornwell was $6,175.34 (calculated at ten percent interest per annum).

It is from this judgment, filed June 7, 1990, that both Cornwell and the Shaffers appeal to this court. Cornwell raises the following assignment of error:

"The trial court erred in awarding post-judgment interest to the plaintiffs where 1) there was a timely tender of monies ultimately determined to be due and owing to plain-tiffs and 2) the amount sought by plaintiff was unliquidated and/or uncertain in fact and in law."

In addition, the Shaffers raise the following cross-assignment of error:

"The trial court erred in determining the period of time for which post-judgment interest was due and owing to plaintiffs from defendant."

These assignments of error require this court to address two essential issues: (1) when does post-judgment interest start, and (2) when does post-judgment interest stop?

Both Cornwell and the Shaffers agree that R.C. 1343.03(B) defines the time period when post-judgment interest starts and stops. R.C. 1343.03(B) provides:

"*** interest on a judgment *** rendered in a civil action based on tortious conduct, *** shall be computed from the date the judgment *** is rendered to the date on which the money is paid."

The first issue is: on what date did post-judgment interest start? The trial court found that the date of its decision, January 18, 1989, was the date post-judgment interest started. The Shaffers agree with the trial court. Cornwell contends that the post-judgment interest started on September 19, 1989, since this court's opinion modified the trial court's decision.

R.C. 1343.03(B) provides that post-judgment interest starts "*** from the date the judgment *** is rendered ***." Cornwell argues that the judgment rendered must be liquidated or certain in law or fact. Cornwell states that the judgment was not liquidated or certain in law or fact since this court modified the trial court's decision on appeal. Hence, Cornwell concludes that the judgment, for purposes of R.C. 1343.03(B), was rendered on September 19, 1989.

This issue was addressed in *Viock v. Stowe-Woodward Co.* (Apr. 28, 1989), Erie App. No. E-88-30, unreported. In paragraph three of the syllabus, the *Viock* court held:

"The fact that the amount of a liquidated damage judgment is modified on appeal does not render the original judgment unliquidated. In the event of such a modification, post-judgment interest is calculated on the modified judgment amount from the date of the original judgment."

The court in *Viock* relied on two unreported Ohio cases which both dealt with this

same issue. Both unreported cases held that post-judgment interest starts on the date of the trial court's judgment entry, even though modified by an appellate court. See *Armstrong v. Modern Sales & Construction Co., Inc.* (June 3, 1986), Adams App. No. 432, unreported; and *Dowdy v. Lee* (May 17, 1984), Stark App. No. CA-6249, unreported.

These holdings are consistent with the general rule that once the trial court's judgment is entered in plaintiff's favor, the defendant's obligation is then due and owing. In the case *sub judice*, the Shaffers, absent a stay of execution, were free to initiate collection procedures for $117,000 upon the filing of the original judgment in their favor on January 18, 1989, since the judgment was effective when filed with the clerk for journalization. Civ. R. 58.

We agree with the holdings in the cases cited. We find that the trial court did not err in finding that the post-judgment interest started to run on the date of the trial court's decision, namely January 18, 1989.

Having determined that post-judgment interest starts to run from the date of the trial court's judgment entry (even if it is later modified by a reviewing court), we turn to the second issue in the case at hand: when does post-judgment interest stop? The trial court held that the post-judgment interest stopped running on September 19, 1989 (the date this court modified the decision of the trial court). The Shaffers contend that the post-judgment interest did not stop until December 8, 1989 (the date Cornwell agreed to allow the Shaffers to negotiate the $92,000 draft and have the trial court determine the amount of post-judgment interest). Cornwell contends that all post-judgment interest stopped on December 16, 1988 (the date she tendered the $92,000 draft to the Shaffers). In fact, since this date is before the date of the starting of post-judgment interest, Cornwell claims she does not owe any post-judgment interest whatsoever.

R.C. 1343.03(B) provides that post-judgment interest stops when "*** the money is paid." Both the Shaffers and Cornwell agree that the money is paid when there is an unconditional tender of the money by the debtor. Both cite the *Viock* case in support of the unconditional tender test.

Paragraph two of the syllabus of *Viock* provides in part:

"*** [T]he judgment debtor has the burden of stopping the accumulation of post-judgment interest by tendering full and unconditional payment of the judgment to the judgment creditor."

Cornwell argues that her December 16, 1988 tender was unconditional. The Shaffers argue that the December 16, 1988 tender was conditional. Cornwell contends that she did not impose any restrictions or limitations upon the Shaffers with respect to the negotiation on the $92,000 draft.

An examination of the letter that was mailed along with the $92,000 draft discloses the following language:

"*** *if your clients are willing to accept this sum in final resolution of this matter,* I would ask that you execute the proposed Entry which I earlier sent to you as well as the enclosed Notice of Satisfaction of Judgment." (Emphasis added.)

We, therefore, are not persuaded that the draft sent on December 16, 1988 was unconditional. The Shaffers would have had to give up their right to assert their claim for $117,000.

This case is unique. While the Shaffers would have given up their right to assert their claim for $117,000, it turned out that exercising this right was meaningless. The amount conditionally tendered turned out to be the right amount. The Shaffers would have suffered no damages if they had cashed the $92,000 draft and given up their right to assert their claim for $117,000.

This court addressed this concept (tendering full payment conditioned on the creditor giving up a right) in *Warren/Sherer Division v. Store Equipment Co.* (Sept. 27, 1984), No. 84AP-41, unreported (1984 Opinions 2446). In *Warren/Sherer,* a jury awarded the defendant $36,149.01. Before the judgment was journalized, the plaintiff tendered to the defendant the full $36,149.01 conditioned upon the defendant not appealing. The defendant refused to accept the $36,149.01 on that basis and did appeal. One of the issues was whether the defendant could collect interest during the pendency of the appeal. This court held that the tender of the full amount of the judgment was conditional. The defendant could collect interest during the pendency of the appeal. To stop post-judgment interest, the debtor must unconditionally tender the money due and owing.

Cornwell further argues that the Shaffers had four options: (1) negotiating the $92,000 draft and still appealing, (2) endorsing the draft showing that the $92,000 was only partial payment, (3) asking Cornwell for permission to endorse the draft without prejudicing their rights, and (4) depositing the money with the court.

But all four options require the creditor to do something. The burden is on the debtor to make the tender unconditional. This approach both preserves the rights of the parties and allows the debtor to stop the running of the post-judgment interest. Hence, this court is not persuaded by these arguments.

Cornwell eventually did do something to make the tender unconditional. On December 8, 1989 (after this court modified the original decision from $117,000 to $92,000), Cornwell agreed to allow the Shaffers to negotiate the $92,000 draft and let the trial court decide the issue of post-judgment interest. Hence, we find that the post-judgment interest stopped on December 8, 1989.[2]

For, the foregoing reasons, Cornwell's assignment of error is overruled. The Shaffers' cross-assignment of error is sustained. The judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part, and this cause is remanded to that court for further proceedings in accordance with law consistent with this opinion.

*Judgment affirmed in part, reversed in part and cause remanded.*

REILLY, P.J., and BOWMAN, J., concur.

KLINE, J., of the Pickaway County Common Pleas Court, sitting by assignment in the Tenth Appellate District.

---

[1] The decision by the trial court was apparently treated by all parties as a judgment entry. A search of the record in this case does not show that a judgment entry was filed with the clerk. This court treats the "decision" as a judgment entry order for purposes of this appeal.

[2] This court is not holding that post-judgment interest stops when the $92,000 draft was cashed. Post-judgment interest stops when the tender becomes unconditional.